COMMONWEALTH *vs.* DANIEL F. VAUGHN.

No. 88-P-903.

Plymouth. February 6, 1992. - April 24, 1992.

Present: BROWN, DREBEN, & GREENBERG, JJ.

*Practice, Criminal,* Disclosure of evidence, Conduct of prosecutor, Mistrial, Instructions to jury, Assistance of counsel. *Due Process of Law,* Disclosure of evidence.

It was error for a judge to deny a criminal defendant's motion for a mistrial after a key police witness gave testimony materially inconsistent with both his investigative report and his grand jury testimony, in a respect that went to the heart of the defendant's case, without the prosecutor's having given defense counsel prior notice of the change. [438-443]

An analogy to "footprints in the snow," in a judge's instructions to the jury, was ill-advised in light of the Commonwealth's evidence of footprints in a criminal case. [443]

A criminal defendant made no showing that his trial counsel's representation was ineffective. [443-444]

INDICTMENTS found and returned in the Superior Court Department on August 18, 1986.

The cases were tried before *Suzanne V. DelVecchio*, J.

*Martin J. Newhouse (James B. Haines* with him) for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The Constitution requires both that a criminal defendant be given a fair and impartial trial and that the government's conduct of the trial be free from all that is deliberately devious or inconsistent with the highest standards of professional conduct. Cf. *Commonwealth* v. *Paiva,* 16 Mass. App. Ct. 561, 563 (1983) (a defendant is entitled to " 'impartial trial by jury' . . ., which all parties should . . . strive to make impeccable"). See also *Townsend* v. *Sain,* 372

U.S. 293 (1963); *Commonwealth* v. *Tucceri*, 412 Mass. 401, 408 (1992) ("the duties of a prosecutor to administer justice fairly . . . go beyond winning convictions"). We believe the Commonwealth's efforts in this case fell so far short of that constitutional imperative that we are obliged to set aside the verdicts and to order a new trial. Compare *Commonwealth* v. *Ellison*, 376 Mass. 1, 3 (1978).

The defendant was convicted by a Superior Court jury of burglary and of burning a dwelling house. He argues on appeal that his motion for a mistrial, made after a key prosecution witness changed a material part of his testimony with no prior disclosure to defense counsel, was improperly denied. He argues also that certain jury instructions created a substantial risk of a miscarriage of justice, that he was denied effective assistance of counsel, and that his motion for a new trial, based on newly discovered evidence, should have been allowed. We conclude that the defendant's motion for a mistrial was improperly denied and that he is entitled to a new trial. We address briefly the other issues raised on appeal only insofar as they may have relevance on retrial.

The record reveals the following. During the early morning hours of February 22, 1986, the victim, Dorothy Quinn, awoke to the sound of two male voices in the hallway outside her bedroom in her three-story house in Marshfield. Fearing that the intruders would hear her if she tried to call the police, Quinn climbed onto the floor next to her bed in an attempt to hide. Quinn testified at trial that the two men came into her bedroom and went through her bureau and closet, apparently looking for jewelry and other valuables. She heard the screech of a smoke alarm and then noticed that the closet in her bedroom was on fire. When the two men left her bedroom, she got up from the floor, jumped out of the bedroom window to the ground some four feet below, and ran to a neighbor's house to call the police and fire departments.[1] Quinn never saw the individuals who were in her house.

---

[1] The police and fire departments responded to the scene. Fires had been set in the kitchen and in the bedroom closet.

During his investigation of the crime scene, Officer Romano of the Marshfield police department found several pieces of jewelry underneath a window in the back of the house. He observed footprints coming down a slope towards that window and then going back up the slope. He followed two sets of footprints, he testified at trial, one through a fence to some stairs and out to Upland Road and another around a pool, through a fence, across a field, and out to Elm Street. One set of footprints had a star-like design on them; the other set had a ridge-like design on them.

Detective Teague also investigated the crime scene and prepared a police report on his investigation. The report described "two sets" of footprints which he had observed at the house: one from a size twelve work boot with two stars in the center of the heel, and the other from a size nine sneaker with a wavy print. Before the grand jury, Teague testified that he observed "two sets of footprints on the ground."

At trial, however, Teague's testimony changed: Asked to describe the tracks at the crime scene, he described three sets of footprints — one set with a star impression, another of a "wavy type," and a third with "little small circles or wavy type prints, . . . similar to the second set." He then, using a chalkboard, described where the tracks were found. The prosecutor asked, "Now, behind the house, did you see a set that was different from the two you have just described?" Defense counsel objected. The objection was overruled, and Teague again described three sets of footprints.

Shortly thereafter, defense counsel moved for a mistrial[2] on the grounds that she had not previously been notified of the existence of the third set of footprints, that Teague's testimony was inconsistent with his police report and with his grand jury testimony, and that she had been unfairly surprised by his testimony at trial. The judge denied the motion

---

[2]The defendant moved for a mistrial immediately after a luncheon recess which was taken in the midst of direct examination. The Commonwealth argues that the defendant's motion for a mistrial was not timely and that the issue has not been properly preserved for appellate review. We do not agree. Contrast *Commonwealth* v. *Foster*, 411 Mass. 762, 767, 768 (1992).

and suggested that counsel use the prior inconsistent state-
ments for impeachment purposes on cross-examination.

During the continued direct examination of Teague which
followed, Teague authenticated one of the photographs taken
at the house that night as depicting two different footprints,
"one on top of the other." In addition, he testified that that
same photograph, which was admitted in evidence, over the
defendant's objection, as exhibit 19, depicted the third set of
footprints to which he had alluded previously.

On cross-examination, Teague acknowledged that in his
police report and at the grand jury hearing he had mentioned
only two sets of footprints and that he had never mentioned a
third set of footprints until he took the witness stand at trial.

Two codefendants, Steven Crowley and Jeff Colby, who
had pled guilty to their involvement in this crime, testified
for the Commonwealth at Vaughn's trial and implicated
Vaughn as the instigator of the crime. A third government
witness, one Judson Hill, testified at trial that, several days
after the break-in, Vaughn admitted to him his involvement
in the burglary at the Quinn house.

Vaughn testified in his own defense that he was at home in
bed at the time of the incident. He denied having had the
conversation with Judson Hill.

James Harrington, an assistant investigative officer for the
Plymouth County bureau of criminal investigation, testified
for the defense that he had taken photographs at the scene
for the police and fire departments and that he had observed
only two sets of footprints at the scene of the crime.

1. *Motion for mistrial.* The defendant asserts that there
was a failure to disclose material exculpatory evidence, in vi-
olation of the principles set forth in *Brady* v. *Maryland*, 373
U.S. 83 (1963), that there was a failure to disclose promptly
changes of substance in the statements of prospective wit-
nesses, in violation of Mass.R.Crim.P. 14(a)(4), 378 Mass.
875 (1979), and that he was unfairly surprised by this mate-
rial change in the Commonwealth's case and thus deprived of
the ability effectively to investigate and counter the new
evidence.

"Due process is violated if the government withholds evidence that is both exculpatory and material to the issue of the defendant's innocence." *Commonwealth* v. *Bryant*, 390 Mass. 729, 746 n.23 (1984). In addition, the Commonwealth expressly agreed, as it is required to do, that it would disclose all exculpatory information within its possession, custody, or control to the defendant prior to trial. See Mass.R.Crim.P. 14(a)(1)(C), 378 Mass. 874 (1979). The Commonwealth, however, takes the position that here there was no failure to disclose. Asserting that the defendant knew all along that there would be evidence of three sets of footprints introduced at trial and that there was no unfair surprise as a result of Teague's change in testimony, the Commonwealth would have us view this case as merely a misinterpretation by the defendant of the actual physical evidence against him. (Alternatively, the Commonwealth characterizes this matter as one of late disclosure.) Only the most imaginative reading of the evidence could lead one to believe that the defendant had notice that evidence of three sets of footprints would be introduced at trial. The police report prepared by Teague, as well as his testimony before the grand jury and the diagram prepared by Officer Romano, all depict only two sets of footprints at the crime scene.

Teague's change in testimony, that suddenly he had evidence of three footprints, is more than a mere "shift[] in detail only" and goes to the heart of the defendant's case. See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 174 (1982). Not only had the tardily disclosed evidence been "developed for the sole purpose of investigating the crime[s] at bar" (*Commonwealth* v. *Gallarelli*, 399 Mass. 17, 22 [1987]), but also it "directly concerned the defendant's participation in the crimes." *Commonwealth* v. *Adrey*, 376 Mass. 747, 754 (1978) (referring to *Commonwealth* v. *Ellison*, 376 Mass. at 18-20). There is no question that evidence tending to impeach Detective Teague's credibility "is exculpatory for the defendant and is clearly material." *Commonwealth* v. *Liebman*, 388 Mass. 483, 489 (1983). See also *Commonwealth* v. *Collins*, 386 Mass. 1, 8 (1982). "Although the evidence was

more incriminating than the earlier statements, it was excul-
patory in the sense that the variance with the previous state-
ments permitted 'challenge[] [to] the credibility of a key
prosecution witness.'" *Commonwealth* v. *Vieira*, 401 Mass.
828, 832 & n.5 (1988), quoting from *Commonwealth* v. *Elli-
son*, 376 Mass. at 22.[3] We ought not have to remind the
Commonwealth once again "to do the right thing." It must
certainly be aware by now of its continuing duty "to dis-
clos[e] all material which is even possibly exculpatory, as a
prophylactic against reversible error and in order to save
court time arguing about it." *Commonwealth* v. *Pizzotti*, 27
Mass. App. Ct. 376, 382 (1989), quoting from *Common-
wealth* v. *St. Germain*, 381 Mass. 256, 262 n.10 (1980). See
also S.J.C. Rule 3:08, PF 7, 382 Mass. 800 (1981) (stan-
dards relating to disclosure of evidence by prosecutor).

To make matters worse, the prosecution appears to have
been aware of the new evidence in advance and cleverly to
have prompted this testimony while Teague was on the
stand.[4] The Commonwealth's behavior in failing to disclose
such a material change in testimony amounts to much more
than a mere error of judgment or an instance of inadvertence
or carelessness by the prosecutor.[5] Cf. *Commonwealth* v. *Gil-*

---

[3]Moreover, "[t]he distinction between inculpatory and exculpatory evi-
dence is not significant where the issue is delayed disclosure, as opposed to
failure to disclosure." *Commonwealth* v. *Baldwin*, 385 Mass. at 175 n.10.
*Commonwealth* v. *Vieira*, 401 Mass. at 832 n.5. "The standards for the
application of sanctions for delayed disclosure of the two types of evidence
are similar." *Commonwealth* v. *Baldwin, supra.*

[4]The prosecutor posed the following question, which the witness was al-
lowed to answer over defense counsel's objection: "Now, behind the house,
did you see a set that was *different* from the *two* you have just described?"
(Emphasis supplied.) The witness responded: "There were two sets of wavy
prints and one set of heavy prints with the star on them."

[5]We think that this tactic could be called, to use the vernacular, a
"sucker punch." Cf. *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct.
429, 433 n.3 (1985) (a so-called classic "cheap shot" tactic). As we have
often said, "the Commonwealth must 'take care to behave itself.'" *Com-
monwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983), quoting from
*Commonwealth* v. *Tirrell*, 382 Mass. 502, 513 (1981) (Kaplan, J.,
dissenting).

*bert*, 377 Mass. 887, 896 n.9 (1979); *Commonwealth* v. *Roberts*, 378 Mass. 116, 127 (1979).

"The grant of a mistrial followed by a new trial is the relief typically granted where a defendant is prejudiced by a prosecutor's failure to disclose properly exculpatory, material evidence." *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 310 (1984), and cases cited. The Commonwealth asserts that such relief was not warranted because the defendant was not prejudiced by the lack of notice of this third set of footprints (see *Commonwealth* v. *Cundriff*, 382 Mass. 137, 149-151 [1980], cert. denied, 451 U.S. 973 [1981]); even if defense counsel had been informed in advance that there were to be such inconsistencies between Teague's in-court and out-of-court statements,[6] she could not have conducted a materially more effective cross-examination of Teague, the Commonwealth argues. In weighing whether delayed disclosure prejudiced the defendant, we must consider "[w]hether and the extent to which the defendant was disadvantaged in defending himself . . . ." *Commonwealth* v. *Lam Hue To*, 391 Mass. at 309. "Where evidence meeting the constitutional standards for materiality is initially suppressed, but then disclosed, it is the consequences of the delay that matter, not the likely impact of the nondisclosed evidence, and we ask whether the prosecution's disclosure was sufficiently timely to allow the defendant 'to make effective use of the evidence in preparing and presenting his case.' *Commonwealth* v. *Adrey*, 376 Mass. 747, 755 (1978)." *Commonwealth* v. *Wilson*, 381 Mass. 90, 114 (1980). *Commonwealth* v. *Baldwin*, 385 Mass. at 175.

In the circumstances of this case we can easily "see how the defense would have altered [its] tactic[s] if it had been informed earlier . . . ." *Commonwealth* v. *Pizzotti*, 27 Mass. App. Ct. at 381. The defendant's entire case rested on an alibi that he was not at the scene of the crime. Up until the moment Teague testified, the defense could rely on the

---

[6]The defendant also argues that with advance notice, he could have called an expert witness in order to dispute the description and interpretation of exhibit 19 which had been offered by Teague. See note 7, *infra.*

fact that the Commonwealth had only two sets of footprints and that the victim heard only two voices in her house on the night of the crime. Since the two codefendants in this case had pled guilty, the defendant's pretrial strategy was to attempt to convince the jury that they were the two whose footprints had been found at the crime scene. Any attempt by the defendant to make that argument was crippled by this "new evidence" of a third set of footprints.

Although the defendant did have the opportunity to cross-examine Teague and to bring out the inconsistencies in his testimony, this cross-examination was not as thorough as it could have been. "In retrospect, it may be thought that counsel did not use [the changes in testimony] to maximum advantage . . . . But the defendant should not be held to a strict standard in order to patch over the prosecution's conduct." *Commonwealth* v. *Ellison*, 376 Mass. at 26-27.

We also find compelling the defendant's argument regarding the lack of opportunity to have exhibit 19 examined by an expert.[7] While the defendant may have known of the existence of exhibit 19, he, without any warning, could not reasonably anticipate that a Commonwealth witness would testify that three sets of footprints could be seen on this photograph rather than two. Given the prosecution witness's testimony that the photograph showed three sets of footprints, we think that the defendant was prejudiced by his lack of opportunity to obtain expert testimony regarding exhibit 19 on his behalf. In sum, the circumstances of this case were such that the delayed disclosure "affected the outcome

---

[7]The defendant did obtain an expert opinion regarding exhibit 19 after the trial, and an affidavit from that expert was attached to and made a part of the defendant's motion for a new trial. The expert examined all of the photographs, including an enlargement of exhibit 19. He noted that exhibit 19 is of "poor quality" and that it is "out of focus." He also stated that "it is not possible to identify with certainty any shoe print in the photograph," but, to the "extent that [he can] discern anything resembling a shoe print" in the photograph, "it appears to be a print similar to, if not identical to" one of the other footprints at the scene. In his opinion, the photographs "probably depict only two" sets of footprints.

of the trial." *Commonwealth* v. *Wilson*, 381 Mass. at 115. See *Commonwealth* v. *Tucceri*, 412 Mass. at 412-414.

Deciding as we do that the defendant's motion for a mistrial was improperly denied, we need not also decide the propriety of the denial of the defendant's motion for a new trial. We note, however, that the Commonwealth's failure to disclose Teague's change in testimony effectively transformed exhibit 19 into "newly discovered evidence." In an affidavit accompanying the new trial motion, an expert who examined the photographs after the trial states that in his opinion the photographs "probably depict only two" sets of footprints. See note 7, *supra*. Because this evidence is clearly material and "casts real doubt on the justice of the conviction" (*Commonwealth* v. *Grace*, 397 Mass. 303, 305 [1986]), the defendant's motion for a new trial should have been allowed. See *Commonwealth* v. *Donahue*, 396 Mass. 590, 602 (1986) (defendant entitled to new trial where prosecutor's behavior denied the defendant access to material and exculpatory evidence).

2. *Jury instructions.* We comment briefly on the trial judge's use of the familiar "footprints in the snow" analogy in her instructions on circumstantial evidence. Although we do not think the judge committed reversible error, see *Commonwealth* v. *Gil*, 393 Mass. 204, 222 (1984), the similarity of the analogy to the Commonwealth's evidence makes use of that particular analogy ill-advised in the instant circumstances of this case.

3. *Ineffective assistance of counsel.* Neither trial counsel's failure to call one Matt Henry, a witness whose testimony would contradict, as well as corroborate, the defendant's testimony (compare *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 [1979]) nor her advice regarding the defendant's taking of a court-administered polygraph examination was "manifestly unreasonable" (*Commonwealth* v. *Adams*, 374 Mass. 722, 728 [1978]), let alone ineffective. The additional argument that defense counsel should have made an "attempt to have the results of the first [private polygraph] test

used in place of the court ordered test" is, of course, frivolous. See *Commonwealth* v. *Stewart*, 375 Mass. 380, 384 (1978).

*Judgments reversed.*
*Verdicts set aside.*