NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-773                                          Appeals Court


COMMONWEALTH  vs.  ATREYO CROWLEY-CHESTER.


No. 13-P-773.

Hampden.     September 8, 2014. - January 5, 2015.

Present:  Berry, Kafker, & Hanlon, JJ.


Firearms.  Evidence, Firearm.  Practice, Criminal, Motion to
    suppress.  Search and Seizure, Inventory, Impoundment of
    vehicle.  Constitutional Law, Search and seizure,
    Impoundment order.  Due Process of Law, Seizure of motor
    vehicle.



Complaint received and sworn to in the Springfield Division
of the District Court Department on March 15, 2011.

A pretrial motion to suppress evidence was heard by Robert
A. Gordon, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Margot Botsford, J., in the Supreme
Judicial Court for the county of Suffolk, and the case was
reported by her to the Appeals Court.


Jane Davidson Montori, Assistant District Attorney, for the
Commonwealth.
Patrick A. Michaud for the defendant.

BERRY, J.  The defendant was charged with carrying a firearm without a license, in violation of G. L. c. 269, § 10(a), and possession of a firearm or ammunition without a firearm identification (FID) card, in violation of G. L. c. 269, § 10(h).  After an evidentiary hearing, a District Court judge allowed the defendant's motion to suppress the loaded firearm recovered by police during an inventory search following the impoundment of the Honda automobile in which the defendant had been a passenger.[1]

Suppression was based on the judge's finding that the impoundment and inventory of the Honda were not necessary.  However, the governing standard is not one of necessity; rather the standard is whether the police actions in impounding and conducting an inventory search of a motor vehicle are reasonably undertaken based on the specific facts and circumstances presented.  For the reasons that follow, we conclude that the impoundment, towing, and inventory of the automobile were reasonable, constitutionally appropriate, and compliant with the written police impoundment policy.  Accordingly, we reverse the order allowing the motion to suppress.

1.  Background.  We summarize the findings of the motion judge, supplemented with undisputed facts adduced at the

_____

[1] A single justice of the Supreme Judicial Court granted the Commonwealth leave to pursue an interlocutory appeal.

suppression hearing.  Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).  On March 15, 2011, Springfield police Officers Longo and Canini were on routine patrol on William Street in Springfield.  At approximately 3:00 A.M., the officers observed a dark-colored Honda automobile legally parked next to a vacant lot with its engine running and its lights off.  Given the late hour, the running engine, and an area known to the officers to have a high crime rate, the police officers shined the police cruiser's spotlight toward the inside of the Honda and saw that it contained two occupants.  As the officers illuminated the vehicle's interior, the defendant passenger slouched down in his seat.

The officers got out of their cruiser and approached the Honda, shining flashlights into the parked car as they approached.  Officer Longo saw the defendant quickly move his left hand between the center console and his left leg in an apparent attempt to conceal a dark-colored object in his hand. (Later, it was established that the dark object in the defendant's hand was a glove.)

Officer Canini ordered both the driver and the defendant to show their hands and remain still.  The two did not comply with the show-hands command.  As Officer Canini continued to approach the driver's side of the Honda, he saw in plain view a silver folding-blade knife in the center cup holder.  Officer Canini

ordered the driver and the defendant to step out of the vehicle. As the driver did so, he put his right hand into his jacket pocket. Officer Canini told him to remove his hand from the pocket. As the driver did that, a white, rock-like substance fell to the ground. Based on his experience, Officer Canini recognized the substance to be "consistent with crack cocaine." The driver was placed under arrest. The officers seized the knife.

Following his arrest, the driver requested that the officers allow the defendant to drive the Honda from the site. However, a computerized check revealed that the defendant did not have a driver's license. Given the foregoing state of affairs, the officers decided the car should be towed from the scene. Pursuant to the Springfield police department's written policy concerning the impoundment and towing of a motor vehicle, an inventory search of the Honda and its contents was conducted. See generally Commonwealth v. Bishop, 402 Mass. 449, 451 (1988).[2]

---

[2] The written Springfield police towing and impoundment policy provides as follows.

"POLICY

"It shall be the policy of this department to inventory the contents of all motor vehicles that are towed by his department. The purposes of this inventory are to:

"1. Determine whether there is any personal property in the vehicle that needs to be protected from loss or damage.

On the floor behind the passenger's seat, Officer Longo found gloves, a ski mask, a hooded sweatshirt, and a pair of sunglasses.[3] In the trunk, the police found a backpack with the defendant's name, "Atreyo," inscribed on it. Under the written police inventory policy, the backpack was opened by the police, and within the backpack were found a loaded handgun, another

"2. To protect the department and its personnel from claims of a failure to protect such property.

"3. To protect the department and its personnel from false claims of loss of property that was never in the vehicle.

"4. To protect departmental personnel and the public against injury from dangerous substances or items that may be in the vehicle.
"PROCEDURE

"Whenever a motor vehicle is ordered towed by a department member, that member shall assume the responsibility for inventorying and safeguarding the contents of the vehicle. The scope of this inventory shall include any locked or closed containers within the vehicle that can be opened without damage as well as any locked portions of the vehicle itself that can be accessed without causing damage (e.g. glovebox, trunk, suitcases, boxes etc.) The department member ordering the tow shall list all items found within the vehicle in the remarks section of the tow sheet. Any monies or articles of value that may be subject to loss or damage shall be taken and submitted to the property division for safekeeping. A notation as to which items were so removed as well as the property tag numbers shall be made in the remarks section of the tow sheet. Anything believed to be dangerous, contraband, or evidence of a crime shall be seized and tagged and a report submitted to the proper bureau."

[3] It is logical to extrapolate that the instrumentalities found in the backseat were potential burglarious tools. However, because these items were found during the inventory search, we do not add them to the calculus concerning the original decision to impound the Honda.

hooded sweatshirt, gloves, and a pay stub with the defendant's name on it.

On appeal, the Commonwealth's principal points in opposition to the suppression order are that (1) the motion judge applied the incorrect standard of legal necessity in suppressing the firearm found following the Honda's impoundment and the inventory search, and (2) the judge incorrectly relied on, and deferred to, the limited analysis of the police action entries in a six-month computerized dispatch log (CAD).[4]  (The CAD document itself was in evidence.)  The motion judge's reliance, the Commonwealth submits, was misplaced because the defense analyst's summary of the CAD was substantially incomplete and did not fully account for a number of crime-related entries in the CAD -- which included a series of calls to the police station, with follow-ups of police dispatches and police reports involving not only serious criminal activities generally, but also, in particular, involving criminal and suspicious activities with motor vehicles.[5]

---

[4] The computerized list is also referred to in the record as a police call activity report.

[5] The defense analyst presented the following limited and inaccurate summary of the CAD exhibit.

> "The bulk of what I saw from the incidents log that I was provided and that's been submitted to you were these calls for well-being checks, false alarms, domestic disturbances, traffic-related offenses, just general

2. <u>Propriety of the impoundment and inventory search</u>. "On a motion to suppress evidence seized during a warrantless search, such as an inventory search as was done here, it is the Commonwealth's burden to establish that the evidence was lawfully obtained." <u>Commonwealth</u> v. <u>Eddington</u>, 459 Mass. 102, 108 (2011) (<u>Eddington</u>). "[T]he propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of the inventory search." <u>Commonwealth</u> v. <u>Garcia</u>, 409 Mass. 675, 678 (1991). With respect to the impoundment and inventory search, under a written police policy, "an officer's judgment in the matter is to be tested by <u>what reasonably appeared to him at the time</u>" (emphasis added). <u>Eddington</u>, <u>supra</u> at 110-111, quoting from <u>Commonwealth</u> v. <u>Sanchez</u>, 40 Mass. App. Ct. 411, 415 (1996). "The decisions demonstrate that our determinations are fact driven, with the overriding concern being the guiding touchstone of '[r]easonableness.'" <u>Eddington</u>, <u>supra</u> at 108, quoting from <u>Commonwealth</u> v. <u>Ellerbe</u>, 430 Mass. 769, 776 (2000) (applying reasonableness standard). <u>Commonwealth</u> v. <u>Bienvenu</u>,

callouts with a -- <u>there was a sprinkling of what could be considered more serious offenses</u>. My memory has it about maybe eight or so, a report of a robbery that type of thing."

But this "sprinkling" description diminishes what the CAD document actually states and omits a lot of the persistent record of criminal activities in the area where the Honda was parked. A more accurate summary of the entries taken from the CAD appears <u>infra</u>.

63 Mass. App. Ct. 632, 634 (2005) (same).  As these cases establish, it is the reasonableness of the police action which is central.  Contrary to the suppression ordered in this case, necessity is not the appropriate governing standard for evaluating the propriety of an impoundment and inventory.

With respect to the reasonableness of a vehicle impoundment, there are two rationales that may justify an impoundment and subsequent inventory.  One rationale for impoundment and inventory of a motor vehicle involves public safety.  The second rationale for impoundment and inventory involves the risk of property damage to a vehicle left parked on a street and possible claims against the police for potential damage to it if left unattended.  "The impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns <u>or</u> by the danger of theft or vandalism to a vehicle left unattended" (emphasis added).  <u>Commonwealth</u> v. <u>Brinson</u>, 440 Mass. 609, 612 (2003) (<u>Brinson</u>), quoting from <u>Commonwealth</u> v. <u>Daley</u>, 423 Mass. 747, 750 (1996).  Both of these justifications apply here.

First, we turn to the public safety rationale.[6]  The factual complex including the police sighting of the Honda parked with

_____

[6] From all that appears of record, the judge did not consider the public safety issue, but instead merely focused on potential property damage claims.  "I find that there was sufficient evidence to conclude that the Honda Accord could have

the engine running in a high crime area; the defendant's slouching down when the cruiser spotlight was directed at the Honda; the defendant's additional furtive movements in trying to hide a dark item (a glove) behind the center console; the occupants' refusal to comply with the police order to show hands; the plain sighting of the knife in the center cup holder; the dropping of crack cocaine from the driver's pocket; and the driver's request to have the unlicensed defendant drive the Honda away, yielded a reasonable basis for the police to be concerned, as a matter of public safety, that weapons and drugs (in addition to the discovered knife) might be contained within the Honda.  See Commonwealth v. Dunn, 34 Mass. App. Ct. 702, 703-704 (1993) (impoundment justifiable if supported by reason of public safety); Commonwealth v. Allen, 76 Mass. App. Ct. 21, 24 (2009).[7]

_____

been parked on William[] Street without a danger of damage or theft that would merit a tow pursuant to the Tow Policy."

   [7] The defendant argues that the Brinson case, in which an impoundment and inventory of a car were found improper, is controlling so that here the impoundment and inventory were also not justified.  But the Brinson case is distinguishable. Brinson involved a lawfully parked car in a private lot that presented "no public safety risk, and . . . no evidence of threat of vandalism to justify impoundment."  Brinson, supra at 614.  We sketch certain other distinguishing details.  In Brinson, the defendant was not arrested within or near the subject car.  Indeed, the subject car was left parked in the private lot, and the defendant was driven approximately a mile away in a different car where the defendant engaged in a drug transaction and was arrested.  In short, in Brinson, there was

The inventory of the Honda included opening the backpack found in its trunk.  This action was compliant with the Springfield police inventory policy which encompasses "locked or closed containers within the vehicle."  See note 2, supra.  The "protection of the public from the dangerous items which might be in the vehicle" includes the interior of a locked trunk that is "certainly not invulnerable to vandalism or theft."  Commonwealth v. Garcia, 409 Mass. at 682.

We next turn to the second rationale for impoundment and inventory which pertains to the threat of potential vandalism or damage to a vehicle, such as this Honda, were it to be left vacant and parked on William Street in this high crime area.  The CAD record, which was admitted in evidence as a documentary

---

little nexus between the arrest and the car left in the private lot.  This case is markedly different, including but not limited to, the following facts:  the unusual/suspicious actions of the two occupants within the Honda (the crouching down in the seat; the furtive movement toward the console by the defendant passenger, and the occupants' unwillingness to comply with a police order to show hands); the plain view presence of the knife in the console cup; and the crack cocaine falling from the driver's pocket.  Beyond these, the record in Brinson did not suggest a risk of vandalism to the car.  In contrast, at the suppression hearing here both the police testimony and the CAD provide evidence of potential risks to the Honda in a high crime area with incidents of car theft, burglary, other suspicious vehicles, and various crimes.  So compiled, the record backdrop in this case is closer to the Eddington case, which upheld the impoundment and inventorying of an automobile, declining to follow and distinguishing Brinson.  See Eddington, supra at 109-111.

exhibit at the suppression hearing,[8] shows that, in just one six-month period of time, there were documented police reports of such offenses as vandalism, burglary, and suspicious vehicles moving about. Indeed, a close examination of the CAD (contrary to the expert's characterization of a "sprinkling" of serious offenses[9]) reflects an area beset with burglaries, theft, and motor vehicle offenses. Indeed, in just the six-month period covered by the CAD, the police responses and reports involve general criminal offenses, including but not limited to seven incidents involving the breaking and entering of a residence; four reports of larcenies; one armed robbery; and one incident of vandalism. Further and, in particular, as to motor vehicles, the CAD reflects two police responses involving the breaking and entering of motor vehicles, two reports of suspicious motor vehicles, and eight incidents called into the police station which are referred therein generically as traffic control, but which required, and received, a police response to the subject area.

In addition to a fuller review of the actual entries in the CAD criminal activity report and police responses thereto, to be

---

[8] "We have consistently held that lower court findings based on documentary evidence available to an appellate court are not entitled to deference." Commonwealth v. Novo, 442 Mass. 262, 266 (2004).

[9] See note 5, supra.

factored is Officer Longo's testimony at the suppression hearing that, at the time of the Honda's impoundment, he was personally aware of a number of crimes that had taken place in the area, including car break-ins and stolen motor vehicles -- happenings which the officer cited as providing a reasonable basis for impounding the Honda, rather than leaving it abandoned on William Street.

Thus, under the standard set forth in Commonwealth v. Ellerbe, 430 Mass. at 776, there were reasonable police concerns about potential theft or vandalism to the Honda if left unattended.  See Brinson, supra at 617.  Based on the foregoing, we conclude that both the public safety and vandalism/property damage rationales supported the impoundment of the Honda and its inventory search pursuant to the written Springfield police policy.  Accordingly, the order allowing the motion to suppress is reversed.  A new order shall enter denying the motion.

So ordered.