Commonwealth *vs*. Juan Caceres.

Worcester. September 15, 1992. - December 10, 1992.

Present: Liacos, C.J., Wilkins, Abrams, O'Connor, & Greaney, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Arrest, Automobile, Container. *Controlled Substances. Evidence*, Certificate of drug analysis.

A State trooper who had stopped a motor vehicle was justified in seizing the vehicle and conducting an inventory search, where the trooper did all that he was required to do to satisfy whatever constitutionally-imposed duty he had, if any, to consider reasonable alternatives to seizure of the vehicle. [750-753]

A police inventory search of a motor vehicle, which led to the discovery, in an open area of the trunk near the vehicle's gas tank, of a red and white plastic bag containing cocaine, did not exceed the scope permissible under written standards for such searches, thereby warranting the inclusion of the bag in the police inventory of the vehicle's contents. [753-754]

In circumstances in which a State trooper could search the trunk of a motor vehicle pursuant to nonspecific written police inventory procedures without violating art. 14 of the Massachusetts Declaration of Rights, an unlocked closed container found in the trunk could be searched pursuant to specific written police inventory procedures, and cocaine found in the closed container seized, without violating art. 14. [754-755]

At the trial of a defendant charged with trafficking in cocaine, there was no prejudicial error in the judge's permitting the jury to have a certificate of a chemical analysis with the defendant's name on it, where the certificate simply told the jury that the defendant was a defendant or a suspect, a fact that the jury already knew. [755-756]

Indictment found and returned in the Superior Court Department on November 8, 1990.

A pretrial motion to suppress evidence was heard by *Robert V. Mulkern*, J., and the case was tried before *Richard F. Connon*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William R. Hill, Jr.*, Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his conviction of trafficking in cocaine. We transferred his appeal to this court on our own motion.

Although the defendant argues one issue arising from his trial, his appeal is principally directed at the denial of his motion to suppress evidence seized during an inventory search of the motor vehicle that he had been driving before a State trooper stopped the vehicle and then arrested the defendant for giving him a false name in violation of G. L. c. 90, § 25 (1990 ed.). The defendant does not challenge the lawfulness of the stop or of his arrest. Relying largely on his rights under the Constitution of the Commonwealth, he argues that (1) the circumstances did not justify seizing the vehicle and conducting an inventory search, (2) the search, in any event, extended into a part of the vehicle that was not within the proper scope of an inventory search, and (3) the opening of an unlocked, closed container, in which the cocaine was found, was an unconstitutional search, even though the regulations governing inventory searches directed that such a container be opened. He also claims prejudicial error because the judge permitted the jury to have a certificate of a chemical analysis with the defendant's name on it.

We affirm the judgment. Facts relevant to each issue are presented as part of our discussion of it.

1. We consider first the defendant's contention that the police had no right to conduct an inventory search of the motor vehicle that he was driving on Route 84 in Southbridge on June 30, 1990. His argument is, in effect, that the police had no proper basis for seizing the vehicle. See *Commonwealth v. Garcia*, 409 Mass. 675, 678 (1991) ("the propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of the inventory search"). His argument

appears to be based on a claimed unreasonable search in violation of his rights under both the Fourth Amendment to the Constitution of the United States and art. 14 of the Massachusetts Declaration of Rights.

The focus of this argument is on the justification for conducting an inventory search at all. We have imposed a requirement of written guidelines concerning the conduct of an inventory search itself. See *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988). We have not previously been asked whether under the State Constitution the police must have written guidelines stating the circumstances in which an inventory search may be undertaken and thus restricting the exercise of police discretion.

We conclude that there was no practical available alternative to the removal of the vehicle and to an inventory search of it. The defendant did not suggest or request any alternative to removal of the vehicle. On the other hand, the trooper did not ask the defendant if he wished to propose a reasonably prompt alternative to seizure of the vehicle. If there is generally such an obligation on the police to do so before an inventory search can be reasonable,[1] the only such alternative arrangement in this case was to find someone else who could lawfully remove the vehicle from the State highway.[2] The

---

[1] It would seem reasonably clear that the failure to give a person an opportunity to make reasonable alternative arrangements for the vehicle would not invalidate an inventory search under Fourth Amendment principles. *United States* v. *Skillern*, 947 F.2d 1268, 1275-1276 (5th Cir. 1991), cert. denied, 112 S. Ct. 1509 (1992). See *Colorado* v. *Bertine*, 479 U.S. 367, 373-374 (1987); 3 W.R. LaFave, Search and Seizure § 7.3(c), at 92 (2d ed. 1987) & 22-23 (Supp. 1992). However, some State courts have indicated that the police must respond to a reasonable request for an alternative disposition of the vehicle. *Id.* § 7.3(c), at 89. Others have placed the burden on the police to initiate consideration of obvious reasonable alternatives. *Id.* § 7.3(c), at 89-91.

[2] See 3 W.R. LaFave, Search and Seizure § 7.3(c), at 92 (2d ed. 1987) ("if the driver asks that his car be turned over to a passenger, this should be done if the passenger is not under arrest or otherwise incapacitated and displays a valid operator's license"). At least, if the owner of the vehicle is present and makes such a proposal, this principle seems appropriate. Pursuant to the motor vehicle inventory procedure, no inventory is to be taken (1) if the vehicle is legally parked and locked, (2) removed by a third

passenger was the only such person shown to be potentially available, and, if, as we shall conclude, the evidence justified a reasonable conclusion that the passenger was not authorized to operate a motor vehicle in Massachusetts, there was no alternative but to seize the vehicle and to conduct an inventory search. Hence, this case presents no possibility of the exercise of that kind of police discretion that as to inventory searches themselves we have said must be constrained by written regulations guiding police conduct. We turn then to the question whether the passenger could lawfully operate a motor vehicle in the Commonwealth.

The motion judge ruled that the trooper lawfully arrested the defendant for a reason having nothing to do with the possession of cocaine. The judge found that, on request, the passenger in the vehicle, Juan Calderon, presented a facially valid Puerto Rico driver's license. The judge further found, without support in the evidence, that Calderon had been "in the Commonwealth for approximately three years." He ruled properly, if the factual premise had been correct, that three years was "a period well beyond the statutory limitation within which a non-Massachusetts licensed operator can drive on the public ways." See G. L. c. 90, §§ 8 & 10 (1990 ed.). On this finding and ruling, Calderon would not have been lawfully allowed to drive the vehicle away. There was, however, no evidence to support the conclusion that Calderon had been in Massachusetts for three years, although the evidence warranted an inference that Calderon had been in the continental United States for three years.[3]

---

party, (3) disabled and towed at the owner's or operator's request, or (4) special conditions requiring prompt removal prevent the taking of an inventory before the vehicle is removed.

[3]The judge could have justified his conclusion that Calderon was not authorized by law to operate a motor vehicle in Massachusetts if he had credited the trooper's testimony that Calderon told him that he did not have a driver's license. That testimony could be read, however, to mean only that Calderon told the trooper that he did not have a license other than the Puerto Rico license which he had already given to the trooper. The judge made no finding concerning this testimony.

The decision not to permit Calderon to drive the vehicle away was based on the trooper's reasonable belief that Calderon was not authorized to operate the vehicle in Massachusetts. The uncontroverted evidence warranted an objectively reasonable belief that Calderon had been in the continental United States for three years and that Calderon should, but did not, have a license to operate other than the Puerto Rico license. Such a belief was reasonable because of statutes in States in the northeastern part of this country (and presumably elsewhere) that grant relatively short grace periods within which new residents holding out-of-State drivers' licenses must obtain in-State licenses. See, e.g., Conn. Gen. Stat. § 14-36 (b) (2) (1991) (60 days); Me. Rev. Stat. Ann. tit. 29, §§ 1 (10-D) (West Supp. 1991) & 531 (West 1978) (30 days); [Mass.] G. L. c. 90, §§ 8 & 10 (1990 ed.) (60 days); N.H. Rev. Stat. Ann. § 263:35 (1982) (60 days); N.J. Stat. Ann. § 39:3-17.1 (West Supp. 1992) (60 days); N.Y. Veh. & Traf. Law § 250 (2) (McKinney Supp. 1992) (30 days); 75 Pa. Cons. Stat. Ann. §§ 102 (Supp. 1992), 1501 (a), 1502 (1977) (60 days); R.I. Gen. Laws § 31-10-1 (a) (Supp. 1991) (30 days). The trooper testified that he did not need to check the validity of the Puerto Rico license because he knew that one who had been living in the continental United States as long as Calderon said that he had been should have obtained a new license.

The trooper did all that he was required to do to satisfy whatever constitutionally-imposed duty that he had, if any, to consider reasonable alternatives to seizure of the vehicle. The inventory search was, therefore, properly undertaken.[4]

2. The defendant next challenges the scope of the inventory search under art. 14 on the ground that the State trooper seized a red and white plastic bag from a part of the vehicle that he was not entitled to search. The bag contained cocaine. The motion judge ruled that the inventory search did not exceed the written standards for such searches. He

---

[4]The defendant's claim that the judge should have given full faith and credit to the Puerto Rico license does not need discussion.

found that the trooper saw the bag "in the vicinity of the gas tank which in this vehicle was located in the trunk." The written regulations concerning inventory searches directed the listing of personal items and valuables in all "open areas" and in "all storage areas and compartments that are accessible to the operator and/or passenger." Motor Vehicle Inventory Procedure, OPR - 26A (hereinafter "OPR - 26A") at I C. The inventory procedures specifically directed that the trunk be searched. *Id.* at II A (2).

The defendant's argument rests on the trooper's testimony concerning where the bag was found. The trooper testified that the bag was found under the right side of the gas tank. There was a cardboard partition separating the gas tank from the trunk. The manufacturer presumably had installed the cardboard for cosmetic purposes. It was not screwed in. The trooper could see the bag as he was performing an inventory of the items in the trunk.

The area where the bag was found was an "open area" in the sense that a person looking in the trunk could see the bag. See *Commonwealth* v. *Figueroa*, 412 Mass. 745, 748-749 (1992). It was also an accessible storage area. The trooper was, therefore, warranted in including the bag in his inventory of the vehicle's contents. The purpose of conducting an inventory search in circumstances such as these, to protect property and to guard against false claims against the police concerning the alleged contents of a vehicle (see *Commonwealth* v. *Garcia*, 409 Mass. 675, 682 [1991]), justified the trooper's action.

3. The defendant raises a further argument under art. 14 based on the fact that the trooper opened the bag which was closed when he seized it. The inventory regulation directed that, except for locked personal containers,[5] "[a]ll closed containers should be opened and each article inventoried in-

---

[5]The regulations direct that locked personal containers should be inventoried as a unit and should not be opened "unless the officer has reasonable suspicion there are explosives, weapons or other substances that presents [*sic*] a potential danger to the officer or the public." OPR - 26A at I C (3).

dividually." OPR - 26A at I C (2). The defendant presents the question whether art. 14 is violated when a closed container is opened during an inventory search, even when the written procedures for conducting the inventory search direct that the closed container be opened. Until now there has been no need to answer this question. See *Commonwealth* v. *Garcia, supra* at 685 n.6; *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 n.1 (1988).[6]

The opening of the closed but unlocked container and the seizure of the cocaine did not violate art. 14. Neither the police nor the owner of the contents of such a container would be adequately protected if an unlocked closed container were to be accounted for only as a unit. Valuables could be, and usually are, kept in closed containers. If a trunk may be searched pursuant to nonspecific written police inventory procedures without violating art. 14 (*Commonwealth* v. *Garcia, supra* at 684),[7] an unlocked closed container may be searched pursuant to specific written police inventory procedures without violating art. 14.

4. Finally, the defendant argues that the judge committed reversible error by the way in which he handled the submission to the jury of a chemist's certificate of analysis of the white powder found in the vehicle. See G. L. c. 147, § 4D (1990 ed.), repealed by St. 1991, c. 412, § 85. The certificate, signed by a chemist from the crime laboratory of the Department of Public Safety, indicated that the 234 grams of white powder contained 49% cocaine. As admitted in evidence, the certificate listed the names of the defendant and the passenger Calderon as "Defendant or Suspect." After the judge had charged the jury, defense counsel moved that the defendant's name be removed from the analysis sheet before

---

[6]The Fourth Amendment is not violated by the opening of a closed container pursuant to standard inventory procedures. See *Colorado* v. *Bertine*, 479 U.S. 367, 372-373 (1987).

[7]*Commonwealth* v. *Garcia*, 409 Mass. 675, 684-685 (1991), distinguished between a trunk and a closed container in that the nonspecific written procedures were read to direct the opening of a trunk but not the opening of a closed container, a point the court did not have to decide.

it was sent to the jury. The prosecution in response sought the removal of only Calderon's name, and the judge agreed. The judge stated that he would tell the jury that the certificate was admitted only to identify the powder found in the vehicle. He failed to do so and the defendant failed to object to the omission.[8]

The defendant now argues that it was prejudicial error to submit the certificate to the jury without Calderon's name on it. He contends that the absence of Calderon's name tended to undercut his defense that the drugs were not his. Although it could be error to admit a certificate that characterized a defendant in a particular way (*Commonwealth v. Sheline*, 391 Mass. 279, 286 [1984] [error to attribute alias to defendant on certificate]), here the certificate simply told the jury that the defendant was a defendant or a suspect, a fact that the jury already knew.[9] The defendant had no right to insist that the name of some other person who was a suspect or also a defendant be included on the drug analysis certificate. There was no error.

*Judgment affirmed.*

---

[8]The defendant did not preserve this point properly for appellate review, but obliquely refers to it in his brief. We see no substantial risk of a miscarriage of justice in the omission of a supplemental charge on the purpose of the chemical analysis certificate. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

[9]The better course would have been, on objection, to delete the reference to "defendant or suspect." See *Commonwealth* v. *Foley*, 12 Mass. App. Ct. 983, 984 (1981).