Agnes, A.J.
The defendant is charged by indictment with possession of a Class A substance, to wit, heroin, with intent to distribute, and it is alleged to be a second offense. He has filed a pretrial motion to suppress evidence seized during an inventory search of a motor vehicle that he was operating at the time of his arrest. The defendant argues that the inventory search was in violation of his rights under both the Fourth Amendment to the Constitution of the United States and Article 14 of the Declaration of Rights of the Massachusetts Constitution. Based on the credible evidence presented at the hearing on the defendant’s motion, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
Sometime before 3:00 p.m. on November 15, 2001, Lynn Police Detective Joseph Chadboume received information from Sergeant Donald Gates that there was an outstanding arrest warrant for the defendant, Christopher Naughton, for violations of the controlled substances law. Sergeant Gates also reported that he had received information from someone at a nursing home located at 655 Boston Street that the defendant would be arriving at the home at approximately 3:00 p.m. to pick up his girlfriend. At 3:00 p.m. there was a shift change at the nursing home. The information supplied by Sergeant Gates also indicated that the defendant would be driving a green Honda Civic automobile. Detective Chadboume and other police officers responded to the area of the nursing home to await the arrival of the defendant. They arrived shortly before 3:00 p.m.
There is a circular driveway, about twenty feet wide, in front of the nursing home in question. It’s wide enough for vehicles to be parked along its circumference, but that area is not available for permanent parking because it would impede access by fire apparatus.
At approximately 3:10 p.m., the police officers, who were in unmarked police cruisers, noticed people who appeared to be staff leaving the nursing home. Shortly thereafter, the police spotted the defendant arriving, as they had been told, in a green Honda Civic automobile. He was the sole occupant of the vehicle. The defendant pulled his vehicle over into the fire lane area of the circular driveway and left the engine mnning. Lynn police officers approached his vehicle, identified themselves, and asked the defendant for his license and identification. It turned out that his license was revoked. As soon as his identity was established, the defendant was informed he was under arrest on the outstanding warrant. He was transported to the police station by Detective Chadboume.
Sergeant Gates was on scene at the time of the defendant’s arrest. Acting in his capacity as the “Authorizing Officer” under the Lynn Police Department Motor Vehicle Tow and Inventory Policy (“Tow Policy”),[1] he ordered that the vehicle be towed. He based his decision on his concern that the vehicle was parked in a location where it would block fire apparatus and could block traffic into and out of the nursing home. He was aware that the vehicle was owned by the defendant’s girlfriend, and that she was finishing her shift at the nursing home at the time of the defendant’s arrival. He acknowledged that the defendant had not parked the green Honda so as to impede the flow of ordinary traffic around the circular driveway. Once the decision to tow was made, Sergeant Gates and other officers conducted an inventory search of the green Honda.
The police seized a hypodermic syringe that was discovered in a pouch area on the rear portion of the front seat while officers were searching the back seat of the vehicle. Sergeant Gates found a brown, paper-covered folder in the trunk. It felt soft to the touch. Based on his training and experience, Sergeant Gates believed it contained packages of drugs. He opened the folder and discovered that it contained glassine baggies of a white powdery substance that appeared to be heroin. Sergeant Gates found two other packages in the trunk that he described as harder “bricks” which also upon being opened revealed a large quantity of smaller packages containing heroin wrapped in glass-ine baggies.
A tow inventory sheet was filled out. However, before the tow truck arrived at the scene, the owner of the vehicle, the defendant’s girlfriend, came out of the nursing home and walked over to where the green Honda was parked. The inventory search had already been completed. She was informed of what had transpired. She was asked if she . would consent to the inventory search and replied in the affirmative. The police then called off the tow, turned the vehicle over to her custody, and left the scene.
DISCUSSION
1. The decision to impound and inventory the motor vehicle.
“Under both the Federal and Massachusetts Constitutions, analysis of the legitimacy of an inventory search of an impounded vehicle involves two related, but distinct, inquiries: (1) whether the impoundment of the vehicle leading to the search meets constitutional strictures, and (2) whether the conduct and scope of the search itself meet those strictures.” Commonwealth v. Ellerbe, 430 Mass. 769, 772-73 (2000). Again, under both federal and state law, the police *45 must act on the basis of written guidelines that establish “standard operating procedures.” Commonwealth v. Bishop, 402 Mass. 449, 451 (1988). Accord, Colorado v. Bertine, 479 U.S. 367 (1987).
2. The police lack justification to issue an impoundment order when there is a practical, available alternative to impoundment.
Under the standardized procedure adopted by the Lynn Police Department that was in force at the time of the police actions in this case, a vehicle may be impounded only when the Authorizing Officer responds to the scene of the tow and personally determines that impoundment would be lawful either under a city ordinance or some other provision of statutory law. Exhibit 1, Tow and Inventory Policy, Procedures, Authorization to Tow. The Lynn Tow and Inventory Policy provides that, in such a case, an inventory search should be conducted “for the limited purpose of protecting the vehicle and its contents, protecting our officers from false allegations of theft, and protecting the public from dangerous items which might be in the vehicle and shall not be used as a pretext for conducting purely investigative searches.” Exhibit 1, Tow and Inventory Policy. The policy further provides that the police have a responsibility to notify the owner “as soon as practicable after the tow is authorized.” Exhibit 1, Tow and Inventory Policy, paragraph 9. When the owner is present at the scene, the notification may he made orally. Exhibit 1, Tow and Inventory Policy, paragraph 10. As for the timing of the inventory, the policy provides that “[a]bsent exceptional circumstances vehicles shall be inventoried as soon as practical after authorization to tow has been made and prior to being removed from the scene.” Exhibit 1, Tow and Inventory Policy, paragraph 9.
The arrest of the operator of a motor vehicle may arise in a wide variety of factual situations, and some, though not all, may justify the impoundment of the automobile and an inventory search of its contents. In the present case, we are dealing with a vehicle which was illegally parked at the time of the arrest. Thus, this case does not involve the issue whether, following the arrest of the operator, the police may impound and inventory a legally parked vehicle out of a concern that the owner’s property may be at risk. Also, it’s not necessary in this case to determine whether the police have an obligation to inform an owner-operator or non-owner-operator that he or she has a right to make alternative arrangements for the custody of the vehicle, to attempt to contact the owner of the vehicle (when the defendant-operator is someone else acting with the owner’s permission), or to accept an alternative arrangement to impoundment when one is proposed by the defendant-operator.[2]
The present case presents the narrow question whether, following the arrest of the operator, the police are free to impound an illegally parked motor vehicle and conduct an inventory search when they have reason to believe that the owner is in the vicinity and only moments away from the scene. Nowhere in the Lynn Police Tow Policy does it explicitly provide that in cases other than those in which the vehicle is evidence of a crime or is being impounded for some other investigatory purpose, the police have a duty to give the owner an opportunity to take control of the vehicle to avoid the need for an order of impoundment. This omission is inconsistent with the explicit statement in the policy section of the Lynn Police Tow Policy which states that the purpose of an administrative inventory is solely to protect the owner from loss of personal property, to protect the police from claims of theft, and to protect the public from dangerous items that might be inside the vehicle, and that impoundment may not be used “as a pretext for conducting purely investigative searches.” Exhibit 1, Tow and Inventory Policy.
Decisions of the United States Supreme Court and of the Supreme Judicial Court dealing with the validity of inventory searches conducted as a result of the impoundment of a motor vehicles, consistently emphasize the principle that the police are authorized to impound and search a motor vehicle without a warrant only in circumstances in which there is a danger posed to the owner, the police, and/or the public if the car is left unattended where it is parked or was stopped. See, e.g., Colorado v. Bertine, 479 U.S. 367, 375 (1987); South Dakota v. Opperman, 428 U.S. 364, 368 (1976); Commonwealth v. Daley, 423 Mass. 747, 750 (1996).
In Commonwealth v. Ellerbe, supra, the Supreme Judicial Court considered a case in which the defendant’s vehicle was stopped for motor vehicle violations that the police observed before she pulled into a convenience store parking lot reserved for customers. The defendant was arrested when the police discovered her license had been suspended. The only passenger in the car also had a suspended license. In these circumstances, the court found it unnecessary to consider whether the City of Boston Police Department’s impoundment and tow regulation, which explicitly gives the police the option to leave a motor vehicle with a person with apparent authority to exercise control over it, was unconstitutional because it does not require the police to choose that option when it is feasible. “We conclude that a specific assessment of the constitutional sufficiency of the regulations is not necessary in the circumstances of this case because the police had no practical available alternative to towing the vehicle.” Id. at 774.
In the present case, the police had knowledge that the defendant would arrive at the nursing home at approximately 3:00 p.m. to pick up his girlfriend who owned the vehicle. Consistent with the information they received, the defendant appeared at the time and place predicted and they observed the nursing home employees exiting the facility as the shift changed. *46 There is no evidence that the defendant’s vehicle was parked in such a way that it had to be moved immediately. The best evidence of this is that the police made no effort to move it while they waited for the tow truck and before it was turned over to Ms. Sullivan. In these circumstances, the Lynn Tow Policy’s failure to require the police to consider a practical, available alternative to the decision to impound and inventory the vehicle contravenes the limited authority of the police to impound motor vehicles for the protection of the owner and the police and renders it constitutionally deficient. Compare Commonwealth v. Ellerbe, supra, 430 Mass. at 782 & n. 10 (“The Boston police department has written procedures . . . that provide an officer with four options for handling the vehicle of an arrested. ‘It shall be the responsibility of the arresting officer to dispose of the car in the following manner: 1. leave it with a person having apparent authority to assume control over it; or 2. park it legally, close the windows, lock it, if possible, and attempt to notify the registered owner; or 3. leave it at the side of the road with windows closed and locked, if possible, if traffic is not obstructed and arrangements can be made for its removal without undue delay; or 4. have it towed for safekeeping’ ”). See also Commonwealth v. Daley, supra, 423 Mass. at 750 n. 4 (“No third person was present, the vehicle was unregistered, and had registration plates belonging to another vehicle”); Commonwealth v. Caceres, 413 Mass. 749, 752 (1992) (“Passenger was not authorized to operate a motor vehicle”).
In a comparable situation, the United States District Court for the District of Massachusetts allowed the defendant’s motion to suppress on grounds that an inventoiy search did not meet constitutional requirements. In United States v. Goodrich, 183 F.Sup.2d 135 (D.Mass. 2001), the defendant was arrested at a VFW Hall in Swampscott on outstanding warrants for armed robbeiy. The defendant arrived at the location driving a car that belonged to his sister. Before the defendant was transported to the police station, he gave the car keys to his wife who also was present. The court found that the police took the keys from his wife and conducted an inventoiy search of the vehicle. They found a firearm inside a duffel bag in the trunk. After completing the inventoiy search, the police allowed the defendant’s wife to remove some personal belongings from the vehicle and asked her to notify her sister-in-law, the actual owner of the car, that it would be towed.
On these facts, the Goodrich court held that the inventoiy search was illegal because the initial decision to impound the car was constitutionally flawed. Id. at 140, citing United States v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996) (“Impoundment based solely on an arrestee’s status as a driver, owner or passenger is irrational and inconsistent with caretaking functions [because it ignores] whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard”). After reviewing a number of federal cases deeding with police actions impounding vehicles, the court observed that “whether an appropriate person is available to move the car is central to an evaluation of the reasonableness of any decision to seize the vehicle.” United States v. Goodrich, supra, 183 F.Sup.2d at 141. A number of appellate courts in other jurisdictions have concluded that impoundment orders are constitutionally invalid in circumstances in which the police have other reasonable alternatives that are readily available to them. See, e.g., State v. Ludvicek, 147 Ga.App. 784, 250 S.E.2d 503 (1978) (police had no right to impound a motor vehicle and conduct an inventoiy search in circumstances in which the defendant-operator was arrested for drunk driving, there was reason to believe that the vehicle belonged to his girlfriend who was waiting for him at her home, and a licensed passenger was willing to deliver the vehicle to the owner without at least making an inquiry of the lawful owner); United States v. Pannell, 256 A.2d 925 (D.C.App. 1969) (although upon the defendant’s arrest for operating without a permit, the police were authorized to impound the vehicle by driving it to a secure police lot, the subsequent inventoiy search was unreasonable under the Fourth Amendment because the defendant had made arrangements for someone to pick it up); State v. Goodrich, 256 N.W.2d 506 Minn. 1977) (impoundment of a motor vehicle and the subsequent inventoiy search was unreasonable under the Fourth Amendment because the defendant who had been arrested for operating under the influence of alcohol had already made arrangements for the disposition of his vehicle); Drinkard v. State, 584 S.W.2d 650 (Tenn. 1979) (police had no authority to impound defendant’s vehicle following his arrest for drunk driving based on the availability of the defendant’s companion-passenger to drive the vehicle from the scene; “if the circumstances that bring the vehicle to the attention of the police in the first place are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of he driver and then search it”).
The mere fact that the defendant’s vehicle may not have been parked legally at the time of his arrest does not alter the duly of the police to determine whether there is a practical, available alternative to impoundment. After all, the purpose of impounding the vehicle and conducting an inventoiy search in the circumstances of a case such as this is to protect the property interests of the owner. Such action by the police, however, comes at a cost to the owner. She incurs the expense of a tow, a fee for the storage, and the risk of damage to the vehicle. While she may have a right to seek reimbursement from the defendant, who was *47 operating the vehicle when it was impounded, there is no guarantee in such a case that she would recover the money she would be required to expend to retrieve her vehicle from the tow company. To define the duty of the police in cases such as this in terms of whether there is a practical, available alternative is in keeping with the standard of reasonableness that is generally applicable in the context of actions taken by the police under their community care-taking authority. See generally Commonwealth v. Evans, 436 Mass. 369 (2002), and cases cited. Under this standard, the police are not required to wait an unreasonable period of time to determine if the owner or another driver is available to take custody of the vehicle. See State v. Valdez, 27 Or.App. 329, 506 P.2d 132 (1978). If the driver expresses no interest in making arrangement for the disposition of the vehicle, and no one on behalf of the owner comes forward and offers to take custody of the vehicle, the police would be warranted in concluding that there was no practical, available alternative to the impoundment of the vehicle.
While there is no Massachusetts case which explicitly declares that the police have a duty to consider a practical, available alternative to the impoundment of the vehicle, it is implied by decisions such as Commonwealth v. Ellerbe, supra, and Commonwealth v. Caceres, supra. Furthermore, to suggest otherwise turns the purpose for an impoundment and inventory search on its head. In the present case, the sole reason advanced by the police for impounding the defendant’s vehicle and ordering a tow was to remove it from a fire lane outside the nursing home. That is certainly a reason within the scope of their tow policy and one that is permitted by the case law. However, when the owner of the car is actually present or reasonably expected to be present in a matter of minutes, as in this case, the justification for the seizure of the vehicle and the corresponding inventorying of its contents evaporates. “The decision to search and tow was unmoored from any justifications securing the community caretaking function of the police. The inventory search justification was a pretext for a warrantless investigative initiative in violation of the Fourth Amendment.” United States v. Goodrich, supra, 183 F.Sup.2d at 144.[3]
3. The Commonwealth has not met its burden of establishing lawful consent.
Police officers testified that after the inventory search was conducted, the owner of the vehicle appeared and gave her consent to the search. There was no evidence presented regarding the circumstances under which such consent was given. For example, under our law, if the vehicle was towed, the owner would have to pay a fee to recover it. Furthermore, the owner is at risk of damage to the vehicle that may result in the process of transporting it or storing it at the tow lot. It would not be surprising for an owner to “consent” to a search in order to avoid incurring the tow charges or undergoing the risk of damage to the vehicle. The general rule is that evidence seized on the basis of an illegal search or seizure must be suppressed. See Commonwealth v. Ramos, 435 Mass. 545, 550 (2000).
It is true that the issue of consent was not the focus of the hearing on the motion to suppress, and the facts surrounding the question of consent may not have been fully developed. However, the burden of establishing consent rests with the Commonwealth. See Commonwealth v. Walker, 370 Mass. 548 (1976). On the facts before me, they did not sustain that burden.
ORDER
Article 14 of the Declaration of Rights of the Massachusetts Constitution requires the suppression of evidence seized during an inventory search that is not conducted in accordance with written, standardized police procedures. Commonwealth v. Bishop, supra, 402 Mass. at 451. Given the purposes of an inventory search, as opposed to an investigatory search, these standardized police procedures must provide that when the police arrest the operator of an illegally parked motor vehicle, they must consider whether there is a practical, available alternative to its impoundment before they may impound it and conduct an inventory search. The police are not required to acquiesce to whatever suggestion might be made by the defendant-operator for the disposition of the vehicle. In determining whether to proceed with the impoundment or to pursue another course, the police must act in a reasonable manner. When public safety does not require the immediate removal of the vehicle, and the owner of the car or an authorized and responsible agent of the arrestee or the owner is actually present or reasonably expected to be present in a matter of minutes, there is no justification for an impoundment order followed by an inventory search of the passenger compartment and trunk. A police impoundment and inventory search policy which does not instruct the officer who makes the impoundment decision to consider whether there is a practical, available alternative to impoundment is constitutionally defective under Article 14 of the Declaration of Rights of the Massachusetts Constitution. For the above reasons, the defendant’s motion to suppress is ALLOWED.

 A copy of the Lynn Police Tow Policy was received in evidence and marked exhibit 1.

 Under federal constitutional law, it appears that the police have no obligation to consider alternatives to impoundment in any of these circumstances so long as they act in accordance with standardized police procedures. See Colorado v. Bertine, 479 U.S. 367, 373-74 (1987), quoting Illinois v. Lafayette, 462 U.S. 640, 647 (1983) (reasonableness of police conduct in such cases does not turn on the existence of less intrusive alternatives). The obligation to act in a reasonable manner, however, may nonetheless require the police to at least consider those alternatives that are presented to them and that are feasible. In any case, state courts have come to different conclusions about some of these *48 questions on the basis of independent interpretations of state law. See Commonwealth v. Caceres, 413 Mass. 749, 751 nn. 1 & 2 (1992) (discussing some of these cases which are collected in 3 W.R. LaFave, Search and Seizure §7.3(c) (3d ed. 1996 & Supp. 2003), and suggesting that if the owner of the vehicle is the one arrested and makes a proposal that a passenger be given custody of the vehicle, the police should honor the request if the passenger is otherwise authorized and capable of driving the vehicle).

 The view that the police were motivated by an investigatory purpose in this case is buttressed by the fact that they were aware that the defendant was in default for drug related offenses.