Lauriat, J.
Ellis Bennett (“Bennett”) stands indicted on a charge of unlawful possession of heroin with intent to distribute, second or subsequent offense (001), arising from an incident that occurred on April 9, 2002 in Woburn, Massachusetts.
Bennett has now moved to suppress from evidence at trial certain items that were seized from the vehicle he was operating on Green Street in Woburn, on April 9, 2002, as a result of an inventory search of his vehicle following his arrest for operating a motor vehicle with a revoked license. Bennett contends that this warrantless search violated his rights under the Fourth Amendment to the United States Constitution and Article Fourteen of the Declaration of Rights.
On July 30, 2003, the court conducted an eviden-tiary hearing on Bennett’s motion. It heard testimony from Detective Edward Fumicello (“Fumicello”) and Officer Dana Gately (“Gately”) of the Woburn Police Department, and it received eight exhibits in evidence. Upon consideration of such testimony of the witnesses as the court finds credible, the exhibits presented at the hearing, and the memoranda and oral arguments of counsel, the court makes the following findings of fact and rulings of law on Bennett’s motion to suppress.
FINDINGS OF FACT
On April 9, 2002, Fumicello and Detective Angelo Piazza (“Piazza”), both members of the Woburn Police Narcotics Unit, were conducting undercover surveillance, in an unmarked car, at 6 Garfield Avenue in Woburn. The Woburn detectives’ surveillance was specifically targeting Bennett, whom they had arrested in the past on drug-related charges. During that evening, a green 1993 Dodge Caravan (“the van”) turned on to Garfield Avenue and stopped at 6 Garfield Avenue. As the individuals exited the vehicle, the detectives recognized the driver of the van as Bennett, and the passenger as Debra Fennelly (“Debra”).
A short time later, the detectives observed Bennett leaving the residence at 6 Garfield Avenue and watched him as he entered the van. Because of their past experience with Bennett, the detectives knew that Bennett’s driver’s license had been revoked. As Bennett drove away, traveling on Garfield Avenue toward Green Street, the detectives radioed to a marked Wo-burn police cruiser, instructing that a motor vehicle stop be conducted because the operator of the vehicle had arevoked license. Gately responded to the call and stopped Bennett’s vehicle on Green Street. Once Gately ran the license plate and confirmed that Bennett’s license had been revoked, he placed Bennett under arrest for operating after revocation. (Exhibits 1 and 2.) Fumicello and Piazza were both at the scene at the time of the Bennett’s stop and arrest.
Pursuant to the Woburn Police Department’s Policy and Procedure No. 46 (“Policy No. 46”) (Exhibit 3), once the operator of a vehicle has been arrested, the officer shall, “[d]etermine if the operator can prove ownership of the vehicle [or] authorized vehicle use satisfactory to the arresting officer.” Policy No. 46, §IV(A)(1). If the operator cannot prove ownership or authorized vehicle use, “the vehicle will be towed from the scene by the ciiy’s on-call tow company.” Policy No. 46, §IV(A)(2). When a vehicle is towed by the city’s on-call tow company, an inventory of the vehicle is automatically conducted. Policy No. 46, §IV(A)(2)(a), IV(B)(3)(b)(i) [sic]. If ownership can be proved and it is legal for the vehicle to remain on the street, the owner can choose how to dispose of the vehicle and the police do not conduct an inventory search. Policy No. 46, §IV(B)(2)(a)(i).
In the present case, Gately, Fumicello and Piazza did not request, and Bennett did not provide them with proof of ownership or other authorized vehicle use. There is conflicting information on whether parking is legal on Green Street. However, because Bennett did not provide any of the officers with proof of ownership or other authorized vehicle use, the van was towed, prior to which Fumicello and Piazza conducted an inventory search of the van.
While conducting the inventory search, Piazza found in the van’s overhead console a sunglasses case holding a hard “egg” form of heroin which equates to *646 approximately four grams of heroin. Piazza also discovered an additional amount of heroin contained in five individual plastic bags. A Sprint cellular phone was also recovered from the floor of the van. (Exhibit 4.)
Later that night, Piazza and Fumicello drove to 6 Garfield Avenue to request consent to search the house from Debra and her mother, Maiy Fennelly (“Mary”), who owned the house. Both Debra and Mary read and signed the consent form. (Exhibit 7.) While the detectives were searching the house, Debra admitted that Bennett had picked up some heroin earlier that day. She also led the detectives to a closet where they found more bags of heroin, along with a plate that contained heroin residue and cards that are used to separate the heroin on the plate. The evidence that was found in both the van and the house were documented on a Woburn Police Department Property Control Form (Exhibit 5) and a Drug Control Log (Exhibit 6).
RULINGS OF LAW
The search and seizure effected in the vehicle Bennett was driving at the time of his arrest were conducted without a search warrant.[1] The Fourth Amendment to the United States Constitution and Article 14 of the Declaration of Rights of the Massachusetts Constitution generally prohibit warrantless searches and seizures. Commonwealth v. Rodriguez, 430 Mass. 577, 579 (2000). Both the federal courts and the Massachusetts Supreme Judicial Court, however, have created limited exceptions to the warrant requirement. Here, the Commonwealth contends that the warrantless search and seizure of Bennett’s vehicle was permissible as a valid inventory search.
Inventory searches are lawful where the impoundment of the vehicle leading to the search, and the conduct and scope of the search itself meets constitutional strictures. Commonwealth v. Ellerbe, 430 Mass. 769, 773-74 (2000). An inventory search will meet the required constitutional strictures if the following four requirements are satisfied: (1) the vehicle is lawfully in police custody; (2) the search is conducted pursuant to standard, written police regulations that are administered in good faith; (3) the search is not a mere pretext concealing an investigative motive; and (4) the search is reasonable under the circumstances. South Dakota v. Opperman, 428 U.S. 364, 372-73 (1976) (the Fourth Amendment prohibits only unreasonable searches and seizures); Ellerbe, 430 Mass. at 773-74; Commonwealth v. Caceres, 413 Mass. 749, 750-51 (1992); Commonwealth v. Bishop, 402 Mass. 449, 451 (1988) (Article 14 permits warrantless inventory searches conducted pursuant to standard police procedures); Commonwealth v. Ford, 394 Mass. 421, 426 (1985) (similar).
Applying the relevant law to the facts found in this case, the court concludes that the warrantless search and seizure effected in the vehicle Bennett was driving at the time of his arrest were conducted pursuant to a valid inventory search.
I.
Bennett does not challenge the lawfulness of his stop and arrest or the reasonableness of the search. He alleges only that the search was not conducted pursuant to Policy No. 46 for motor vehicle inventory searches, and in the alternative, that the search was pretext concealing an investigative motive. Both issues are addressed below.
Bennett contends that Gately failed to follow Policy No. 46 when he failed to affirmatively question Bennett about ownership or authorized use of the vehicle. Policy No. 46 states that once the operator of a vehicle has been arrested, the officer shall, “(d]etermine if the operator can prove ownership of the vehicle [or] authorized vehicle use satisfactory to the arresting officer.” Policy No. 46, §IV(A)(1). If the operator cannot prove ownership or authorized vehicle use, “the vehicle will be towed from the scene by the ciiy’s on-call tow company” and an inventory of the vehicle is automatically conducted. Policy No. 46, §IV(A)(2), IV(A)(2)(a), IV(B)(3)(b)(i) [sic]. If ownership can be proved and it is legal for the vehicle to remain on the street, the owner can choose how to dispose of the vehicle and the police do not conduct an inventory search. Policy No. 46, §IV(B)(2)(a)(i). Although Gately made no affirmative inquiries of Bennett regarding ownership or authorized use of the vehicle beyond requesting Bennett’s drivers license and veiiicle registration, neither the written policy, nor constitutional strictures place such a burden on an arresting officer.
Policy No. 46 require an arresting officer to determine whether the operator can prove ownership or other authorized use “satisfactory to the arresting officerPolicy No. 46, §IV(A)(l)(a) (emphasis added). The policy does not require an officer to make affirmative inquiry or to solicit additional proof of ownership or authorized use when the license and registration do not match, as in the present case. Pursuant to Policy No. 46, when an officer determines that the operator lacks proof of ownership or authorized use, “there is no need to advise him/her of his/her option to find an alternative disposition for the vehicle [. . .]; the vehicle will be towed [and] an inventory of the vehicle will be conducted.” Policy No. 46, §IV(A)(2).
To date, neither the Supreme Judicial Court nor the Court of Appeals has found that constitutional principles require police officers to provide vehicle operators with an opportunity to establish ownership or authorized use when stated police procedures allow such persons to make alternate arrangements for vehicles that would otherwise be impounded. In Commonwealth v. Caceres, 413 Mass. 749 (1992), the defendant was arrested for giving a false name during a routine traffic stop. 413 Mass. at 750. The defendant, who was not the owner of the vehicle, moved to suppress evidence found during the subsequent in- *647 ventoiy search. Id. The defendant did not suggest, nor did the officer ask whether the defendant “wished to propose a reasonably prompt alternative to seizure of the vehicle.” Caceres, 413 Mass. at 751-52. Without specifically ruling on the issue, the court stated that “it would seem reasonably clear that the failure to give a person an opportunity to make reasonable alternative arrangements for the vehicle would not invalidate an inventoiy search under Fourth Amendment principles.” Caceres, 413 Mass. at 751, n.1; but see Commonwealth v. Naughton, 16 Mass. L. Rptr. 43, 46 (2003) (Agnes, J.) (reasonableness requires the police to determine “whether there is a practical available alternative to impoundment”).
Given that neither Policy No. 46 nor constitutional principles require an officer to make affirmative in-quiiy or investigation into proof of ownership or authorized use, this court concludes that the warrantless search and seizure in the present case were conducted pursuant to a lawful and valid inventoiy policy.
II.
Bennett also challenges the inventoiy search as a mere pretext, masking an unlawful investigatory intent. Gately’s compliance with Policy No. 46 is sufficient to defeat this argument. The Supreme Judicial Court has held that “the fact that the searching officer may have harbored a suspicion that evidence of criminal activity might be uncovered as a result of the search” does not turn an otherwise lawful inventoiy search into an impermissible intrusion into the defendant’s constitutional protections. Commonwealth v. Garcia, 409 Mass. 675, 679 (1991) (quoting Commonwealth v. Machett, 386 Mass. 492, 510 (1982)). In Garcia, the arresting officer was aware of an outstanding warrant against the defendant/vehicle operator prior to conducting an inventoiy search of the vehicle. Id. The Supreme Judicial Court held that although the officer may have suspected he would find evidence of criminal activity as a result of the search, the inventoiy search was constitutionally permissible because it was done in accordance with established State Police procedures. Id.
Given that the inventoiy search of the vehicle in which Bennett was arrested was made in compliance with Policy No. 46, this court concludes that any other motive harbored by Officer Gately is not sufficient to constitute a pretext. Bennett’s motion to suppress must therefore be denied.
ORDER
For the foregoing reasons, the defendant’s Amended and Substitute Motion to Suppress Evidence Obtained from a Warrantless Search is DENIED.

Bennett does not challenge the search of his person or the search of his home, both of which were conducted subsequent to his arrest.