## COMMONWEALTH *vs.* PAUL MUCKLE.

No. 03-P-485.

Plymouth. April 15, 2004. - August 23, 2004.

Present: CYPHER, GRASSO, & KAFKER, JJ.

*Search and Seizure,* Threshold police inquiry, Inventory, Container, Impound-ment of vehicle. *Constitutional Law,* Search and seizure. *Threshold Police Inquiry. Controlled Substances.*

A District Court judge erred in denying a motion to suppress evidence of marijuana in a crumpled paper bag discovered during an inventory search of the defendant's motor vehicle, given the absence of standard written procedures requiring the police to open closed but unlocked containers when conducting an inventory search of an impounded vehicle. [679-685]

At a criminal trial on charges of illegal possession of marijuana, the evidence was insufficient to convict the defendant, where such evidence was obtained from an illegal search of the defendant's motor vehicle. [685]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on January 14, 2002.

A pretrial motion to suppress evidence was heard by *Robert E. Baylor,* J., and the case was tried before *Thomas S. Barrett,* J.

*Stephen Elliott* for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. An inventory search of the defendant's motor vehicle led to the discovery of marijuana inside a crumpled Dunkin' Donuts bag. On appeal from his conviction for illegal possession of marijuana, the defendant contends that (1) the motion judge erred in denying his motion to suppress; (2) the evidence of constructive possession was insufficient to support his conviction; and (3) the trial judge erred in imposing a com-mitted sentence for a first drug offense without making written

findings as required by G. L. c. 94C, § 34.[1] We agree that the motion judge erred in denying the defendant's motion to suppress evidence and reverse the defendant's conviction.[2]

1. *Motion to suppress.* We take the facts from the motion judge's findings and undisputed testimony presented at the hearing on the motion to suppress. See *Commonwealth* v. *Hinds*, 437 Mass. 54, 55 (2002), cert. denied, 537 U.S. 1205 (2003). At approximately 4:00 P.M. on January 13, 2002, Officer Joseph DeMoura of the Bridgewater police department was traveling in a marked police cruiser on Route 18. As he approached the entrance to a Dunkin' Donuts, as was his routine, DeMoura began checking the license plates of motor vehicles by typing their plate numbers into his mobile computer.[3]

Among the plates DeMoura checked that afternoon were those attached to a Dodge cargo van, light purple, that was headed into the Dunkin' Donuts lot a few vehicles in front of his cruiser. As DeMoura completed purchasing a cup of coffee at the drive-through window, he received a response to his computer inquiry indicating that the registered owner of the van, Paul Muckle, had a suspended license. DeMoura left Dunkin' Donuts and drove across the street to Winter Place Plaza, where he waited.

Shortly thereafter, the van, which DeMoura observed to contain two individuals, emerged from the Dunkin' Donuts lot and proceeded down Route 18. DeMoura followed and stopped the vehicle in the breakdown lane. DeMoura approached the driver's side, asked the operator for his license, and inquired if he was the registered owner. The defendant, who was driving, handed DeMoura a license that identified him as Paul Muckle, and confirmed, verbally, that he was the registered owner of the

---

[1] A single justice has stayed the defendant's sentence pending appeal.

[2] Without the marijuana that should have been suppressed, no basis for conviction remains. See part 2, *infra.*

[3] The mobile computer provides information available through the Law Enforcement Agencies Processing System (LEAPS). The officer inputs license plate numbers, and, within seconds, receives various information in reply, including the type of vehicle that is assigned to the plate, whether the vehicle is registered, whether the vehicle owner has an active license, and whether any warrants are outstanding. See *Commonwealth* v. *Starr*, 55 Mass. App. Ct. 590, 591 n.4 (2002).

vehicle. After DeMoura again verified that the defendant's operator's license had been suspended, DeMoura arrested him. The front seat passenger, Hugh Hussett, also had an outstanding warrant for a court default, so DeMoura arrested Hussett as well. With the arrival of Officers William Lemanski and Mario Fucci as backup, the police transported the defendant and Hussett to the Bridgewater police station.

In reliance on a written inventory policy, the police arranged to tow the defendant's vehicle from Route 18, a heavily traveled roadway, and then searched the van.[4] The interior of the van consisted of passenger seats and an open cargo area that was filled with various papers and tradesmen's tools. Among the items on the floor of the cargo area was a crumpled Dunkin' Donuts bag, located about four to five feet from the console behind the driver and passenger seats. Officer Fucci picked up the paper bag, which had no "volume or weight," and "opened it."[5] Inside, he found a small clear plastic baggie containing a green leafy substance that was later shown to be marijuana.

---

[4]The Bridgewater police department's written inventory policy, promulgated on November 1, 1988, provides, in pertinent part:

"1. Following the arrest of the driver, the officers present *will take custody* of the vehicle in each of the following situations: (1) the vehicle is in an unsafe or illegal position, *or* (2) the vehicle was used in the commission of a crime or in a collision which will be the basis for criminal charges, *or* (3) if there is no proper person present who has been authorized by the driver to take custody.

". . .

"4. The following steps will be followed in the inventory. The passenger area of the car will be thoroughly examined and personal property will be removed and stored in a secure place in the police station. The glove compartment and the trunk will also be examined and personal property will be taken out if the officer has taken custody of the keys or if *these areas are unlocked.* Locked areas will not be broken into unless you have a search warrant or unless necessary for emergency safety reasons." (Emphasis in original.)

[5]The motion judge found that "Fucci picked up this bag and saw a clear baggy inside with what appeared to be a green leafy substance inside of it." To the extent that the judge's finding implies that the contents of the bag were visible to Fucci without opening the bag, such a finding would be contrary to the record. See *Commonwealth* v. *Moynihan*, 376 Mass. 468, 473 (1978) (appellate court bound to accept judge's subsidiary findings of fact absent clear error). The only testimony on the point was Fucci's assertion that when he found the bag, he "opened it . . . to see if there was anything in the bag that [he] needed to inventory." The Commonwealth has properly conceded that

Fucci handed the substance to Officer DeMoura and continued his inventory of the vehicle. In the course of that search, he also found a nylon laundry bag secured by a drawstring. He opened the bag and discovered shoes, clothing and some empty glassine baggies. Fucci turned the baggies over to Officer DeMoura.

After finishing his search, Fucci completed a written "Record of Inventory and Tow" form that described the condition of the vehicle as having various dents and scratches, and described the inventoried personal items in the van as "various tools and clothes in rear compartment." None of the inventoried items was taken for safekeeping by the police.

The propriety of the discovery of the marijuana and the glassine baggies turns on whether the written inventory policy at issue impermissibly leaves to the discretion of a police officer the decision whether to open closed but unlocked containers, such as the Dunkin' Donuts bag and the nylon laundry bag. Preliminarily, we observe that the stop of the van, the arrests of its occupants, and the impoundment of the vehicle were constitutionally proper. Officer DeMoura's discovery that the license of the van's registered owner had been suspended did not involve a search in the constitutional sense. See *Commonwealth* v. *Starr*, 55 Mass. App. Ct. 590, 592-594 (2002) (operator of motor vehicle has no reasonable expectation of privacy in number plate required by law to be displayed conspicuously on vehicle). "While random police *stops* of motor vehicles to check licenses and registrations violate the Fourth Amendment [to the United States Constitution], see *Delaware* v. *Prouse*, 440 U.S. 648 (1979), random computer *checks* of number plates do not." *Id.* at 594 (emphasis in original). Once Officer DeMoura learned that the registered owner's license to operate was under suspension, he had an objective basis for stopping the vehicle and requesting that its operator produce his license. "While it is certainly possible that someone other than a vehicle's registered owner may be operating the vehicle on any given occasion, the likelihood that the operator is the owner is strong enough to satisfy the reasonable suspicion standard." *Commonwealth* v. *Deramo*, 436 Mass. 40, 43-44 (2002).

---

Fucci had to open the crumpled Dunkin' Donuts bag before its contents were visible.

We need not dwell on the propriety of the impoundment of the defendant's vehicle in this instance. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991) (lawfulness of inventory search contingent on propriety of impoundment of vehicle). As noted, the Bridgewater police department's written inventory policy requires the police to take custody of a vehicle where it is "in an unsafe or illegal position . . . *or* . . . there is no proper person present who has been authorized by the driver to take custody." The arrest of the defendant and his passenger resulted in a vehicle being present in the breakdown lane of a busy public roadway, at dusk, without an authorized, licensed driver who could lawfully remove it from the roadway. Here, as in *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 774 (2000), "because the police had no practical available alternative to towing the vehicle, and thus no discretion to exercise," we need not decide whether a written inventory policy, like the one here, that gives police the discretion to choose among alternatives to impoundment, is constitutionally sufficient. See *Commonwealth* v. *Caceres*, 413 Mass. 749, 750-753 (1992) (automobile stopped on highway may be impounded when police have arrested driver and no licensed operator is available to move vehicle to secure location); *Commonwealth* v. *Daley*, 423 Mass. 747, 750 (1996). See also *Commonwealth* v. *Dunn*, 34 Mass. App. Ct. 702, 703 (1993) ("The impoundment of a vehicle for noninvestigatory reasons is generally deemed justifiable if supported by reasons of public safety or the danger of theft or vandalism to a vehicle left unattended").

More problematic, and fatal to the search conducted here, is the absence of standard written procedures requiring the police to open closed but unlocked containers when conducting an inventory search of an impounded vehicle. A warrantless inventory search of a lawfully impounded vehicle meets constitutional requirements if carried out in accordance with standard procedures and if there is no suggestion that the procedure was a pretext concealing an investigatory motive. See *South Dakota* v. *Opperman*, 428 U.S. 364, 376 (1976); *Commonwealth* v. *Matchett*, 386 Mass. 492, 509-510 (1982). The rationale underlying this exception to the warrant requirement is the necessity of safeguarding the car or its contents, protecting the

police against unfounded charges of misappropriation, protecting the public against the possibility that the car might contain weapons or other dangerous instrumentalities that might fall into the hands of vandals, or a combination of such reasons. *Commonwealth* v. *Matchett, supra* at 510.

We find unpersuasive the Commonwealth's argument that the Bridgewater police department's written inventory policy, requiring that the passenger area of a vehicle be "thoroughly examined" and all personal property be removed and secured at the police station, necessitated opening the Dunkin' Donuts bag to determine whether it contained personal property, as opposed to trash. The Commonwealth maintains that the police did not have discretion to open the Dunkin' Donuts bag because they were *required* to open it to ascertain that it did *not* contain personal property requiring itemization.

The offered distinction is definitional legerdemain that, under the guise of determining what is trash and what treasure, would categorize supposed trash as a special kind of property not subject to standard written procedures, thereby eviscerating the requirement of such procedures as a means of eliminating police discretion. Moreover, opening such a bag, even one that is unquestionably refuse, as part of an inventory search, begs the question: How does such action advance the purposes of a routine inventory search (safeguarding contents, protecting police from charges of misappropriation, or protecting the public from dangerous items that might be in the vehicle)? See *Commonwealth* v. *Matchett*, 386 Mass. at 510; *Commonwealth* v. *Garcia*, 409 Mass. at 682.

While we recognize that valuables may be secreted virtually anywhere, a bag of trash is not a customary storage area for valuables. Even were we to accept the premise that because a bag of refuse might contain valuables it should permissibly be inventoried along with other items, a bag of refuse that must be "opened" for its contents to be visible is like any other unlocked closed container. See *Commonwealth* v. *Caceres*, 413 Mass. at 754-755 (closed plastic bag is an unlocked container). Compare *Commonwealth* v. *Garcia*, 409 Mass. at 685 (paper bag whose top was open enough to see inside was not a closed container). What is important is whether the item constitutes a closed container capable of holding personal property of value.

Even broadly read, the Bridgewater police department's inventory policy fails to require the police to open closed containers. As in *Commonwealth* v. *Rostad*, 410 Mass. 618, 622 (1991), the inventory policy at issue is not explicit or obvious enough to guard against the possibility that police officers would exercise discretion with respect to whether to open closed containers, such as the nylon bag or the Dunkin' Donuts bag, as part of their inventory search.[6] Here, the inventory procedure did not authorize opening of closed but unlocked containers *at all*. "[A] procedure directing an officer to 'search the arrestee and make an inventory of all items collected' does not extend to the opening of a closed container." *Id.* at 623. Compare *Commonwealth* v. *DeVlaminck*, 32 Mass. App. Ct. 980, 981 (1992) (inventory policy specified that "all closed containers found in the vehicle that may contain personal effects of the arrestee or others shall be opened and inventoried").

We emphasize that we are not concerned with *whether*, consonant with Federal and State constitutional requirements, police may open closed but unlocked containers in conducting an inventory search. Clearly, police may do so, provided the written inventory policy requires them to do so. See *Commonwealth* v. *Caceres*, 413 Mass. at 755 (unlocked closed container may be searched pursuant to specific written police inventory procedures without violating Fourth Amendment or art. 14). "Neither the police nor the owner of the contents of such a container would be adequately protected if an unlocked closed container were to be accounted for only as a unit. Valuables could be, and usually are, kept in closed containers." *Ibid.* Here, we deal only with an antiquated written inventory policy that entirely lacks a direction to open closed but unlocked containers. "[I]f police open a closed container during an inventory search in the absence of a specific written procedure requiring them to do so, then any evidence they discover in the container must be suppressed." *Commonwealth* v. *Garcia*, 409 Mass. at 684-685. The opening of the Dunkin' Donuts bag and the nylon laundry bag were not constitutionally permissible

---

[6]As noted, the inventory policy at issue was promulgated in 1988 and, to our understanding, has not been modified to take into account the significant developments in case law on the requirements and limits of inventory searches.

inventory searches. The exclusionary rule bars the admission of evidence seized in violation of the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988); *Commonwealth* v. *Ellerbe*, 430 Mass. at 773. Accordingly, the marijuana and the glassine baggies should have been suppressed.

2. *Sufficiency of the evidence.* The defendant also maintains that the Commonwealth presented insufficient evidence to support his conviction and that the judge erred in denying his motion for a required finding of not guilty. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). We agree, but for reasons different from those advanced. As at trial, the defendant argues that the evidence was insufficient to establish that he constructively possessed the marijuana found inside the Dunkin' Donuts bag. See *Commonwealth* v. *Daley*, 423 Mass. at 752 (discovery of contraband in same vehicle with defendant, without more, insufficient to establish possession). We need not address the issue of constructive possession because "[i]n this case it is clear that if the motion to suppress had been allowed, the evidence that remained would have been insufficient to support a conviction. The defendant's motion for a required finding of not guilty must now be allowed." *Commonwealth* v. *Thibeau*, 384 Mass. 762, 765 (1981). See *Commonwealth* v. *Straw*, 422 Mass. 756, 762-763 (1996); *Commonwealth* v. *Rosenthal*, 52 Mass. App. Ct. 707, 716 (2001). Without the marijuana found inside the Dunkin' Donuts bag, the evidence is incontrovertibly insufficient to support a conviction for illegal possession of marijuana. Apart from the illegal search, there was no evidence that the defendant illegally possessed marijuana.

Accordingly, we reverse the judgment of conviction, set aside the verdict, and order that judgment enter for the defendant on the complaint.

*So ordered.*